# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM S.,[1] | : | Case No. 2:22-cv-03848 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## DECISION AND ORDER

---

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income in October 2020. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, this Court AFFIRMS the Commissioner's decision.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

## I.     BACKGROUND

Plaintiff asserts that he has been under a disability since December 4, 2019. At that time, he was forty-eight years old. Accordingly, Plaintiff was considered a "younger person" under the Social Security regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c).[2] Prior to the issuance of the ALJ's decision, Plaintiff turned fifty years old and changed to a "person closely approaching advanced age." 20 C.F.R. § 404.1563(d). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 9) is summarized in the ALJ's decision ("Decision," Doc. No. 9-2 at PageID 34-53), Plaintiff's Statement of Errors ("SE," Doc. No. 10), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.     STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's applications for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since December 4, 2019, the alleged onset date. |
| Step 2: | He has the severe impairments of degenerative disc disease of the lumbar spine/sacroiliac joint disease, status post lumbar fusion and subsequent right SI fusion with post-operative small retrolisthesis L3-L4 without significant central or foraminal stenosis and sciatica, and chronic obstructive pulmonary disease (COPD). |

4

He has the nonsevere impairment of epididymal cyst/unilateral high scrotal testicle with suprapubic abdominal pain.

Step 3:    He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    His residual functional capacity (RFC), or the most he can do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of the following limitations: "[W]ork that requires an entry level job involving simple, routine tasks, that is, non-fast-rate production defined as one involving no conveyor belt or assembly line work and no hourly quotas; can lift and/or carry [ten] pounds frequently and [twenty] pounds occasionally (from very little up to one-third of an [eight]-hour workday); can stand and/or walk (with normal breaks) for [six] hours in an [eight]-hour workday, [Plaintiff] requires the opportunity to stand for [fifteen] minutes at one time before needing to sit for [two] minutes before resuming standing so long as he is not off task;[3] can sit (with normal breaks) for [six] hours in an [eight]-hour workday, [Plaintiff] requires the opportunity to sit for [fifteen] minutes at one time before needing to stand for [two] minutes before resuming sitting so long as he is not off task; can perform pushing and pulling motions with the upper and left lower extremities within the aforementioned weight restrictions for two-thirds of an [eight]-hour workday but can only do so occasionally with the right lower extremity; needs to avoid hazards such as moving machinery and unprotected heights but does not need to avoid hazards typically found in the workplace such as boxes on the floor or ajar doors; needs to be restricted to a work environment with good ventilation that allows [Plaintiff] to avoid frequent concentrated exposure to extreme heat, extreme cold, and high humidity; needs to be restricted to a work environment that allows [Plaintiff] to avoid frequent concentrated exposure to pulmonary irritants such as fumes, dust, gases, and smoke; and can perform occasionally: climbing stairs with handrails, balancing,[4] stooping, crouching, kneeling, and crawling but he needs to avoid climbing ladders, scaffolds, and ropes."

---

[3] The ALJ defined "off task" as "an inability and/or a reduction in productivity over the course of an 8-hoour [sic] workday." (Decision, Doc. No. 9-2 at PageID 41.)

[4] The ALJ noted: "The DOT and SCO define 'balancing' as 'Maintaining body equilibrium to prevent falling when walking, standing, crouching, or running on narrow, slippery, or erratically moving surfaces; or when performing gymnastic feats[.]'" (Decision, Doc. No. 9-2 at PageID 41.)

He is unable to perform any of his past relevant work.

Step 5:       Considering Plaintiff's age, education, work experience, and RFC,
              there are jobs that exist in significant numbers in the national
              economy that he can perform.

(Decision, Doc. No. 9-2 at PageID 40-48.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 48.)

**B.       The ALJ's Symptom Severity Analysis**

After describing the applicable legal standard, the ALJ summarized Plaintiff's

symptoms, subjective complaints, and testimony that he provided during the November

2021 hearing. (Decision, Doc. No. 9-2 at PageID 42.) The ALJ summarized the medical

records and acknowledged the subjective complaints and daily activities that Plaintiff

reported to his medical providers. (*Id.* at PageID 43-45.) The ALJ also described medical

opinions and prior administrative findings. (*Id.* at PageID 45-46.) The ALJ concluded

that although Plaintiff's impairments could reasonably be expected to cause some of his

symptoms, the "intensity, persistence and limiting effects of these symptoms are not

entirely consistent with the medical evidence and other evidence in the record." (*Id*. at

PageID 43.)

The ALJ explained his decision to include certain restrictions in the RFC.

(Decision, Doc. No. 9-2 at PageID 44.) He limited Plaintiff to light work because of the

evidence related to his back impairment. (*Id.*) Due to Plaintiff's complaints of chronic

back pain, he limited Plaintiff to standing and/or walking for fifteen minutes at a time,

after which he would need to sit for two minutes. (*Id.*) Similarly, the ALJ limited Plaintiff to sitting for fifteen minutes at a time, after which he would need to stand for two minutes. (*Id.*) The ALJ explained that he included postural and hazard limitations based on Plaintiff's prior lumbar surgery and continued pain. (*Id.*) The ALJ noted that although Plaintiff had not complained of any specific respiratory symptoms, he imposed additional environmental limitations because of Plaintiff's COPD diagnosis. (*Id.* at PageID 44-45.) Finally, the ALJ found that the combination of Plaintiff's medical conditions and associated symptoms warranted task-related restrictions. (*Id.* at PageID 45.)

### C.  Neurosurgeon Phillip Immesoete, M.D.

In an October 2019 letter, Dr. Immesoete stated that Plaintiff was "unable to work at [that] time due to significant [sacroiliac] joint dysfunction." (AR, Doc. No. 9-7 at PageID 353.) Dr. Immesoete noted he would re-evaluate Plaintiff and determine when he could return to work after an upcoming surgery. (*Id.*) Dr. Immesoete performed Plaintiff's sacroiliac joint fusion surgery in November 2019. (*Id.* at PageID 364.)

The ALJ described Dr. Immesoete's letter and noted that the determination of whether a claimant is able to work is "an issue reserved for the Commissioner of the Social Security Administration, not examining professionals." (Decision, Doc. No. 9-2 at PageID 45.) The ALJ stated that statements on issues reserved to the Commissioner "are neither inherently valuable nor persuasive." (*Id.*)

### D.  Consultative Examiner Deidre Parsley, D.O.

Dr. Parsley performed a consultative physical examination in November 2021. (AR, Doc. No. 9-9 at PageID 619-27.) Plaintiff's physical examination findings included

right hip tenderness and tenderness of the lumbar spinous process and bilateral paralumbar musculature. (*Id.* at PageID 620.) Straight leg raising was negative in the sitting and supine positions, although Plaintiff reported back pain during straight leg and lumbar range of motion testing. (*Id.*) Neurological findings included atrophy of the right distal thigh, and Plaintiff could only half squat due to low back pain. (*Id.* at PageID 621-22.) Dr. Parsley reported that Plaintiff was stable at station and walked with a mildly antalgic gait. (*Id.* at PageID 626.) Dr. Parsley opined that Plaintiff's ability to perform work-related activities such as sitting, standing, walking, bending, stooping, lifting, carrying, squatting, crawling, pushing, and pulling "may be moderately impaired." (*Id.* at PageID 622.)

The ALJ concluded that Dr. Parsley's opinion was "only somewhat persuasive." (Decision, Doc. No. 9-2 at PageID 45.) The ALJ reasoned that the opinion lacked specificity and was "based on a one-time examination, and not based on longitudinal perspective, including the entirety of evidence received at the hearing level." (*Id.*) Nevertheless, the ALJ concluded that Dr. Parsley's examination findings of tenderness of the right hip, bilateral paralumbar tenderness, decreased range of motion of the lumbar spine, and a mildly antalgic gait warranted certain limitations in the RFC. (*Id.*)

### E. State Agency Medical Consultants

State agency medical consultant Lynne Torello, M.D. completed a physical RFC assessment form in December 2020. (AR, Doc. No. 9-3 at PageID 120-21.) Dr. Torello opined that Plaintiff could perform the exertion requirements consistent with light work, subject to the following postural limitations: never climb ladders, ropes, or scaffolds;

occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and frequently balance. (*Id.*) According to Dr. Torello, Plaintiff had no manipulative, visual, communicative, or environmental limitations. (*Id.* at PageID 121.)

Uma Gupta, M.D. completed a physical RFC assessment after reviewing the updated record at the reconsideration level in April 2021. (*Id.* at PageID 133-34.) Dr. Gupta affirmed the limitations that Dr. Torello had assessed, except she also opined that Plaintiff needed to avoid all exposure to hazards. (*Id.*)

The ALJ found the opinions of the state agency medical consultants somewhat persuasive. (Decision, Doc. No. 9-2 at PageID 46.) The ALJ reasoned that the consultants did not adequately consider Plaintiff's COPD. (*Id.*) The ALJ also concluded that evidence submitted after their assessments "support[ed] environmental limitations and additional limitation with respect to sitting and standing/walking." (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff contends that the ALJ erred because his RFC is not supported by substantial evidence. (SE, Doc. No. 10 at PageID 634-39.) Plaintiff also argues that the ALJ "failed to consider [Plaintiff's] lumbar radiculopathy as a medically determinable impairment," and so did not account for this impairment in the RFC. (*Id.* at PageID 639-42.) For the reasons discussed below, Plaintiff's assertions are not well-taken.

### A.    The ALJ's RFC Is Supported By Substantial Evidence.

A claimant's RFC describes the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). Determination of the RFC is a task reserved for the ALJ. 20 C.F.R. § 404.1546(c); *see also Webb v. Comm'r of Soc.*

*Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his [RFC]'").

When formulating the RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on all relevant evidence in the record, including the claimant's descriptions of his limitations and symptoms, objective medical evidence, medical opinions, other medical evidence, evidence from non-medical sources, and prior administrative medical findings. *See* 20 C.F.R. § 404.1545(a)(1)-(5).

Plaintiff argues that the RFC is unsupported by substantial evidence because he "lacks the ability to stand and walk for [six] hours out of an [eight]-hour workday on a consistent basis." (SE, Doc. No. 10 at PageID 636.) The Court disagrees and concludes that the ALJ's findings are supported by substantial evidence.

The ALJ acknowledged many of Plaintiff's subjective complaints in the decision, including severe back pain that started at his right hip and radiated upward to his lower and upper back, as well as swelling in the right hip and lower back attributed to nerve damage. (Decision, Doc. No. 9-2 at PageID 42.) The ALJ also acknowledged Plaintiff's complaints of difficulty with prolonged sitting, standing, and walking, and specifically his testimony that he could stand for only ten to fifteen minutes before needing to sit, could sit for only thirty to thirty-five minutes at a time (in a padded chair) before needing to stand, and could walk no more than a fourth of a mile. (*Id.*)

The ALJ also summarized the medical records that documented Plaintiff's treatment for his back pain and associated symptoms. (*Id.* at PageID 43-44.) The ALJ acknowledged that Plaintiff underwent sacroiliac joint fusion surgery in November 2019 and began complaining of recurrent pain beginning in approximately September 2020. (*Id.* at PageID 43.) The ALJ described Plaintiff's post-surgical treatment which included lumbar medial branch blocks and lumbar radiofrequency ablation. (*Id.* at PageID 43.) The ALJ acknowledged many of the abnormal examination findings such as limited lumbar range of motion, decreased strength, tenderness to palpation, positive facet loading, positive FABER signs, pain upon straight leg raising, atrophy of the right thigh, and an antalgic gait. (*Id.* at PageID 43-44.)

The ALJ compared this evidence to other examinations that showed no swelling or crepitus of the right hip, negative straight leg raising testing, intact sensation, no neurologic deficits, no tenderness on some occasions, and no need for the use of an ambulatory aid. (Decision, Doc. No. 9-2 at PageID 43-44.) He also cited an April 2021 lumbar spine MRI that showed stable post-surgical changes, only a small retrolisthesis at the L3-4 level, and no significant central or foraminal stenosis. (Decision, Doc. No. 9-2 at PageID 43.) The ALJ further cited Plaintiff's statement to his provider that he responded well to the lumbar medial branch blocks. (*Id.*)

The ALJ concluded that the balance of the objective evidence did not support Plaintiff's allegations of disabling symptoms. (Decision, Doc. No. 9-2 at PageID 43.) Even so, the ALJ accounted for this evidence by limiting Plaintiff to the reduced range of light work set forth in the RFC. The ALJ explained that to account for Plaintiff's back

pain, he limited Plaintiff to standing for fifteen minutes a time, after which he needed to sit for two minutes before standing again, and to sitting for fifteen minutes at a time, after which he needed to stand for two minutes before resuming sitting. (*Id.* at PageID 44.) The ALJ included postural and environmental limitations in the RFC because of Plaintiff's continued post-surgical pain. (*Id.*) The ALJ also stated that the "combination of Plaintiff's medical conditions and associated symptoms" warranted additional limitations for "an entry level job involving simple, routine tasks, that is, non-fast-rate production defined as one involving no conveyor belt or assembly line work and no hourly quotas." (*Id.*) The Court concludes that the ALJ's findings are supported by substantial evidence.

Plaintiff further contends that the ALJ "erroneously relied on his own lay opinion, instead of the substantial evidence of the record." (SE, Doc. No. 10 at PageID 636.) According to Plaintiff, because "it is not clear which opinion the ALJ relied upon in making [his] determination" and because "no opinion was given 'great' or 'significant' weight," the ALJ erred because he "relied on his own lay opinion, rather than the opinion of any physician" in making the RFC determination. (*Id.* at PageID 638.)

This argument fails because "[t]he responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); citing 20 C.F.R. § 404.1546(c). An ALJ is required to consider medical opinion evidence when determining the RFC, but he is not required to adopt them or adopt any such findings verbatim. *See Poe*, 342 F. App'x at 156-57 (6th Cir. 2009). The ALJ's explanation shows that he relied on substantial evidence to support his conclusions when he evaluated the medical evidence, Plaintiff's subjective complaints,

and the medical opinion evidence to formulate the RFC. Because the ALJ's RFC is within the permissible "zone of choice" and his findings are supported by substantial evidence, they must be affirmed. *Mullen,* 800 F.2d at 545.

### B.     The ALJ Properly Analyzed The Medical Opinion Evidence.

The Court also concludes that the ALJ did not err in his analysis of the medical opinion evidence. ALJs are required to analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed his claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important."
20 C.F.R. § 404.1520c(b)(2) (emphasis added). As to the first factor (supportability),
"[t]he more relevant the objective medical evidence and supporting explanations
presented by a medical source are to support his or her medical opinion(s) . . . the more
persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the
second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the
evidence from other medical sources and nonmedical sources in the claim, the more
persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). In other
words, supportability addresses whether a medical professional has sufficient justification
for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861,
2022 U.S. Dist. LEXIS 123524 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.).
Consistency, by contrast, requires the ALJ to compare the medical opinion at issue to
"*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-
00524, 2023 U.S. Dist. LEXIS 27912, at *50 (N.D. Ohio Jan. 31, 2023).

Because they are the most important factors, the ALJ is required not only to
consider the supportability and consistency of all medical opinions in the record, but also
to "explain *how* he or she considered them."[5] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-
00326, 2023 U.S. Dist. LEXIS 26266, at *15 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.)
(citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis
added)). No "specific level of detail" is required, as "the appropriate level of articulation

---

[5] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining
factors. 20 C.F.R. § 404.1520c(b)(2).

will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 U.S. Dist. LEXIS 96117, at *20 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of the SSA*, No. 3:21-CV-00129, 2022 U.S. Dist. LEXIS 175673, at *11 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 U.S. Dist. LEXIS 86680, at *20 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 U.S. Dist. LEXIS 229366, at *7 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 U.S. Dist. LEXIS 99023, at *15 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

Here, the ALJ complied with applicable regulations when he concluded that the opinion of consultative examiner Dr. Parsley was only somewhat persuasive. (Decision,

Doc. No. 9-2 at PageID 45.) The ALJ addressed supportability when he explained that Dr. Parsley's opinion lacked specificity and was "based on a one-time examination," which is an appropriate factor to consider under 20 C.F.R. § 404.1520c(c). He addressed consistency when he found that Dr. Parsley's opinion was not based on the longitudinal evidence of record. (*Id.*)

The ALJ also properly evaluated the state agency medical consultants' findings pursuant to 20 C.F.R. § 404.1520c. He addressed consistency when he found their opinions only somewhat persuasive because they did not adequately consider Plaintiff's COPD diagnosis, and also did not consider subsequent evidence that supported additional limitations. (Decision, Doc. No. 9-2 at PageID 46.)

Finally, the ALJ correctly concluded that treating neurosurgeon Dr. Immesoete's statement that Plaintiff was unable to work is on an issue reserved to the Commissioner pursuant to 20 C.F.R. § 404.1520b(c)(3). Such a statement is "inherently neither valuable nor persuasive" and the ALJ was not required to provide an analysis of this evidence. 20 C.F.R. § 404.1520b(c).

## C. The ALJ Properly Analyzed Plaintiff's Symptom Severity.

Plaintiff argues that the ALJ erred because the objective evidence supports his subjective complaints. (SE, Doc. No. 10 at PageID 637.) But the Court concludes that the ALJ complied with the two-step process for evaluating symptom severity required by 20 C.F.R. § 404.1529 and Social Security Ruling 16-3p.

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's

alleged symptoms." SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017). The ALJ must make this determination based upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms . . . and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3.      Factors that precipitate and aggravate the symptoms;

4.      The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.      Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6.      Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7.      Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. § 404.1529(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id.* The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

Here, the ALJ complied with the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p. The ALJ determined that Plaintiff has medically determinable impairments (degenerative disc disease of the lumbar spine/sacroiliac joint disease, status post lumbar fusion and subsequent right SI fusion with post-operative small retrolisthesis L3-L4 without significant central or foraminal stenosis and sciatica; COPD; and epididymal cyst/unilateral high scrotal testicle with suprapubic abdominal pain) that could reasonably cause some of the alleged symptoms. (Decision, Doc. No. 9-2 at PageID 40, 43.)

The ALJ then considered the evidence in the record and found that Plaintiff's statements about the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence of record. (*Id.* at PageID 43.) Because the Court concludes that the ALJ's findings are supported by substantial evidence, it must affirm the ALJ's decision.

### D.   The ALJ Did Not Reversibly Err When Analyzing Plaintiff's Lumbar Radiculopathy.

Plaintiff asserts that the ALJ erroneously failed to consider Plaintiff's lumbar radiculopathy as a medically determinable impairment, and thus "gave no consideration to . . . the potential impact that this impairment would have on his [RFC]." (SE. Doc. No. 10 at PageID 639-42.) This contention is not well-taken.

The Court concludes that the ALJ did consider Plaintiff's radiculopathy at Step Two and throughout the rest of the sequential evaluation because he evaluated Plaintiff's sciatica. The ALJ found that Plaintiff had the following severe impairments that are related to his back condition: "degenerative disc disease of the lumbar spine/sacroiliac joint disease, status post lumbar fusion and subsequent right SI fusion with post-operative small retrolisthesis L3-L4 without significant central or foraminal stenosis and *sciatica*." (Decision, Doc. No. 9-2 at PageID 40 (emphasis added).) As Defendant correctly points out, sciatica is another term for radiculopathy. (*See* Mem. In Opp., Doc. No. 12 at PageID 655 n.7 (citing *Radiculopathy*, https://www.hopkinsmedicine.org/health/conditions-and-diseases/radiculopathy [https://perma.cc/B63N-NEJE] ("When radiculopathy occurs in the lower back, it is known as lumbar radiculopathy, also referred to as sciatica because

19

nerve roots that make up the sciatic nerve are often involved.")).) *See also* T.K. Schiefer,

M.D., *Sciatica and Radiculopathy: Peculiar Names for Shooting Back, Leg Pain*,

Speaking of Health (July 9, 2021), https://www.mayoclinichealthsystem.org/hometown-

health/speaking-of-health/sciatica-and-radiculopathy-peculiar-names

[https://perma.cc/XT73-55CW] ("In most cases, [sciatica] is caused by compression of

one of the nerve roots that make up the sciatic nerve, usually the last lumbar nerve root

— L5 — or the first sacral nerve root — S1 — as they exit the spine . . . . The medical

term for the condition is radiculopathy.").

 Other courts in this circuit have acknowledged that lumbar radiculopathy and

sciatica are the same condition. *See Witte v. Berryhill*, No. 3:15-cv-00580, 2017 U.S.

Dist. LEXIS 104488, at *9-10 (M.D. Tenn. July 6, 2017) ("Lumbar radiculopathy, or

sciatica, refers to a disease involving the nerve roots of the lumbar spine or sciatic nerve;

the condition may cause pain, numbness, and tingling in the leg and buttock, rather than

the lumbar spine itself . . . ." (citing *Hohman v. Colvin*, No. 14-3229-CV-S-REL-SSA,

2015 U.S. Dist. LEXIS 90381, at *24 n.6 (W.D. Mo. July 13, 2015)); *Williams v. Colvin*,

No. 1:16CV00856, 2017 U.S. Dist. LEXIS 53780, at *43 n.12 (N.D. Ohio Feb. 1, 2017)

("Radicular pain is a type of pain that radiates into the lower extremity directly along the

course of a spinal nerve root . . . . The most common symptom of radicular pain is usually

called sciatica or sometimes radiculopathy, which is pain that radiates along the sciatic

nerve down the back of the thigh and sometimes into the calf and foot." (citing Pamela

Verkuilen, A.P.N.P., *Radiculopathy, Radiculitis and Radicular Pain* (Nov. 18, 2005),

https://www.spine-health.com/glossary/radicular-pain-and-radiculopathy

[https://perma.cc/LWT8-5C5T])).

Here, the ALJ considered the evidence related to Plaintiff's overall back condition, including sciatica/lumbar radiculopathy, when formulating the RFC. The ALJ acknowledged Plaintiff's subjective complaints of radiating back pain and swelling. (Decision, Doc. No. 9-2 at PageID 42.) The ALJ considered Plaintiff's complaints of difficulty with prolonged sitting, standing, and walking. (*Id.*) The ALJ considered Plaintiff's treatment history for his back condition, which included sacroiliac joint fusion surgery, medial branch blocks, and lumbar radiofrequency ablation. (*Id.* at PageID 43-44.) He also described the April 2021 lumbar spine MRI and various examination findings. (*Id.* at PageID 43-44.) The ALJ accounted for Plaintiff's impairments by limiting Plaintiff to the reduced range of light work, with further restrictions for no prolonged sitting, standing, or walking. (*Id.* at PageID 43-44.) The Court finds that substantial evidence supports the ALJ's finding that the RFC's limitations accounted for all of Plaintiff's impairments, including sciatica/lumbar radiculopathy.

**IT IS THEREFORE ORDERED THAT**:

1.    Plaintiff's Statement of Errors (Doc. No. 10) is OVERRULED;

2.    The Court AFFIRMS the Commissioner's non-disability determination; and

3.    The case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge